UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| ANTHONY OKULOVICH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 2:17-cv-00132-JMS-MJD |
| ) | |
| DURHAM & DURHAM, LLP, ) | |
| ) | |
| Defendant. ) | |

## **ORDER**

This matter is before the Court on Defendant Durham & Durham, LLP's ("Durham") Motion to Dismiss, [Filing No. 11], and Motion for Rule 11 Sanctions, [Filing No. 12]. Plaintiff Anthony Okulovich alleges that Durham sent him a deficient and misleading debt collection letter in violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.* For the following reasons, the Court **DENIES** Durham's Motions.

### I.
### LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim that does not state a right to relief. The Federal Rules of Civil Procedure require that a complaint provide the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)). In reviewing the sufficiency of a complaint, the Court must accept all well-pled facts as true and draw all permissible inferences in favor of the plaintiff. *See Active Disposal Inc. v. City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011). A Rule 12(b)(6) motion to dismiss asks whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to

relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). The Court may not accept legal conclusions or conclusory allegations as sufficient to state a claim for relief. *See McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011). Factual allegations must plausibly state an entitlement to relief "to a degree that rises above the speculative level." *Munson v. Gaetz*, 673 F.3d 630, 633 (7th Cir. 2012). This plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## II.
### BACKGROUND

The following facts are drawn from Mr. Okulovich's Complaint, [Filing No. 1], and attached exhibit, [Filing No. 1-1], which are treated as true for the purpose of resolving Durham's Motion. *E.g.*, *Geinosky v. City of Chi.*, 675 F.3d 743, 745 n.1 (7th Cir. 2012) (noting that courts must consider "documents attached to the complaint" under Rule 12(b)(6)).

Due to his long-term medical issues, Mr. Okulovich has incurred several debts for medical care. [Filing No. 1 at 2.] One such debt was placed with Durham for collection. [Filing No. 1-1 at 2.] At some point after Durham initially contacted Mr. Okulovich about the outstanding debt, it sent Mr. Okulovich a letter, dated April 25, 2016 ("Letter"). [Filing No. 1 at 2; Filing No. 1-1 at 2.] The Letter was printed on "Durham & Durham Attorneys at Law" letterhead and provided as follows:

**FINAL NOTICE - SETTLEMENT OFFER**

Dear Anthony Okulovich:

As addressed in our previous correspondence, medical services have been provided to you as noted above. To date, full payment has not been received for these services. This outstanding balance is your responsibility.

> In order to close your file and remove your account from our systems, our firm is authorized to offer you a 30% discount on your outstanding balance. This settlement offer will allow you to clear this outstanding debt and enjoy a significant savings.
>
> Return this form with the above referenced payoff amount or pay online . . . . Make your check or money order payable to Durham & Durham and upon receipt of your payment the account will be closed. The opportunity to take advantage of this settlement offer will expire thirty days from the date of this letter.
>
> At this time, no attorney with this firm has personally reviewed the particular circumstances of your account. **This is an attempt to collect a debt. Any information obtained will be used for that purpose.** If you have any questions please contact our office.
>
> Thank you for your attention to this matter.
>
> Respectfully yours,
> Durham & Durham, L.L.P.

[Filing No. 1-1 at 2 (emphasis in original).]

On March 24, 2017, Mr. Okulovich brought suit in this Court, alleging that the Letter violated his rights under the FDCPA by failing to disclose that the Letter was from a debt collector. [Filing No. 1.] On May 12, 2017, Durham filed its Motion to Dismiss, [Filing No. 11], and Motion for Rule 11 Sanctions, [Filing No. 12], which are now ripe for determination.[1]

### III.
### DISCUSSION

Durham argues that Mr. Okulovich's Complaint fails to state a claim because the Letter adequately disclosed that it was from a debt collector. [Filing No. 11.] In response, Mr. Okulovich argues that the Letter fails to explicitly state that it was from a debt collector. [Filing No. 16 at

---

[1] Durham has included its argument in the body of its Motion to Dismiss. [Filing No. 11.] Local Rule 7-1(b) requires motions to dismiss to be "accompanied by a supporting brief." S.D. Ind. L.R. 7-1(b)(1). Going forward, Durham should take care to comply with all local rules, as "[t]he court may strike any document that does not comply with the rules governing the form of documents filed with the court." S.D. Ind. L.R. 1-3.

10.] Mr. Okulovich further argues that any disclosure suggesting that the Letter was from a debt collector is overshadowed by the fact that the Letter was sent on law firm stationary and has references to "attorneys" and "settlement." [Filing No. 16 at 4.] In reply, Durham again argues that its disclosure was sufficient. [Filing No. 21 at 1-4.] Durham also argues that the Letter would not confuse an unsophisticated consumer as to whether it was sent by a debt collector. [Filing No. 21 at 4-7.]

In evaluating whether a debt collector's communications comply with the FDCPA, the Court must apply an "unsophisticated consumer" standard. *Heng v. Heavner, Beyers & Mihlar, LLC*, 849 F.3d 348, 352 (7th Cir. 2017). This standard is consistent with the FDCPA's goal of protecting the "consumer who is uninformed, naive, or trusting." *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994); *McMahon v. LVNV Funding, LLC*, 744 F.3d 1010, 1019 (7th Cir. 2014). "[W]hile the unsophisticated consumer may tend to read collection letters literally," the consumer "does not interpret them in a bizarre or idiosyncratic fashion." *Gruber v. Creditors' Prot. Serv., Inc.*, 742 F.3d 271, 274 (7th Cir. 2014) (internal quotations omitted). Dismissal is appropriate only "when it is apparent from a reading of the letter that not even a significant fraction of the population would be misled by it." *Zemeckis v. Global Credit & Collection Corp.*, 679 F.3d 632, 636 (7th Cir. 2012).

Mr. Okulovich brings his claims pursuant to 15 U.S.C. § 1692e, which begins with a general prohibition against "using any false, deceptive or misleading representation in connection with the collection of any debt." *Marquez v. Weinstein, Pinson & Riley, P.S.*, 836 F.3d 808, 811 (7th Cir. 2016). In addition to this general rule, § 1692e "itemizes sixteen communications that constitute violations of that provision." *Id.*

Among the sixteen itemized violations of § 1692e is subsection (11), which is "quite clear on what is required of a debt collector in an initial communication and in a subsequent communication." *Damm v. Woods & Bates*, 2017 WL 2193237, at *2 (C.D. Ill. 2017). Specifically, "in the initial written communication with the consumer" the debt collector must disclose "that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose." 15 U.S.C. § 1692e(11). In "subsequent communications," the debt collector must disclose "that the communication is from a debt collector." *Id.* These are "different obligations," which depend on "whether the communication is an initial or subsequent one." *Damm*, 2017 WL 2193237, at *3. Violations of § 1692e are generally not actionable unless they are material—that is, if a misstatement "would not mislead the unsophisticated consumer" in intelligently responding to an effort to collect a debt, the misstatement does not violate the FDCPA. *Hahn v. Triumph P'ships LLC*, 557 F.3d 755, 758 (7th Cir. 2009) (internal quotation omitted); *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 324 (7th Cir. 2016) ("For such claims, we must assess allegedly false or misleading statements to determine whether they could have any practical impact on a consumer's rights or decision-making process . . . .").

Mr. Okulovich relies heavily on the district court's order denying a motion to dismiss in *Damm*, which illustrates that determining whether a letter violates § 1692e is a highly context-specific inquiry. 2017 WL 2193237. *Damm* rejected a plaintiff's argument that an initial communication requires the affirmative disclosure that "the sender of the communication attempting to collect the debt is a debt collector" under subsection (11), "because it is only 'in subsequent communications' that the sender is required to remind the consumer of its status as a debt collector." *Id.* at *2. If the communication at issue had been a subsequent communication, however, "the Defendant would also have had to identify itself as a debt collector to comply with

5

the statute." *Id.* *Damm* thus dealt with an initial communication that did not have the subsequent communication notice, and held that the initial communication was not additionally required to provide the subsequent communication notice.

*Damm* likewise addressed whether the plaintiff's complaint regarding the initial communication, which the court held technically complied with subsection (11), nonetheless stated a claim under the general prohibition on misleading communications under 15 U.S.C. § 1692e. The defendant was a law firm acting as a debt collector, and the collection letter stated: "'This firm represents Abraham Lincoln Memorial Hospital, and this account has been turned over to us for our attention.' The Defendant does not explain the nature of its representation of Lincoln Memorial or that it has been retained as a debt collector." *Id.* at *4. Emphasizing that whether a particular letter could be misleading to an unsophisticated consumer is a question of fact, the court agreed with the plaintiff that "a consumer might reasonably believe that a letter from a law firm signifies the preparation of legal proceedings, not the collection of a debt," or that the "correspondence could have been sent to hide the fact that Defendant is a debt collector and to instill fear that the Plaintiff may be subject to legal action for failure to comply with the Defendant's instructions." *Id.* The court therefore denied the defendant's motion to dismiss.

Durham, on the other hand, relies on several cases decided in a markedly different context from *Damm* and from this case. Among such cases are *Ross v. Commercial Financial Services, Inc.*, 31 F. Supp. 2d 1077 (N.D. Ill. 1999), *Epps v. Etan Industries Inc.*, 1998 WL 851488 (N.D. Ill 1998), *Petit v. Retrieval Masters Creditor Bureaus, Inc.*, 211 F.3d 1057 (7th Cir. 2000), and *Volden v. Innovative Financial Systems, Inc.*, 440 F.3d 947 (8th Cir. 2006).

First, each of these cases except *Ross* was decided on a motion for summary judgment. This is an important distinction as "'confusion' is a matter of fact rather than law," and ordinarily

a plaintiff should be given an opportunity to "demonstrate that there is confusion as a matter of . . . [a] letter's actual effect on unsophisticated consumers." *Walker v. Nat'l Recovery, Inc.*, 200 F.3d 500, 503 (7th Cir. 1999); *Lox v. CDA, Ltd.*, 689 F.3d 818, 822 (7th Cir. 2012).

Second, all of these cases are factually distinct from this case as none involved a law firm's collection efforts. *Ross* involved a subsequent communication that contained, much like in this case, the initial communication disclosure required under § 1692e(11). 31 F. Supp. 2d at 1079-80. However, the letter also "clearly disclose[d] that CFS [was] a 'different kind of debt collection company.'" *Id.* at 1079. The court observed that, given this disclosure, it would be "difficult to image how even the most unsophisticated consumer could interpret that phrase as meaning anything other than the fact that CFS is a debt collector. A 'debt collection company' is a 'debt collector' in anyone's vernacular." *Id.* On that basis, the court granted the defendant's motion to dismiss.

*Epps* and *Petit* were both decided on motions for summary judgment and neither involved law firms acting as debt collectors. *Epps* involved letters sent by Collection Protection Association that were signed by a "Collection Manager." 1998 WL 851488, at *1. Under these circumstances, the *Epps* court held that an unsophisticated consumer would not be "confuse[d] about CPA's status as a debt collector" because the "letter contain[ed] no offer 'to help the debtor.'" *Id.* at *9. Nor did the letter bear any indication that someone other than a collection agency sent the letter in an attempt to collect a debt. *See id.*

*Petit* involved a letter sent by Retrieval Masters Creditor Bureau, Inc. 211 F.3d 1057. The plaintiff argued that the name "Creditors Bureau" could cause confusion with the term "credit bureau" or that an unsophisticated consumer might believe "that the collection agency in question is both a credit bureau and a creditors' bureau," *id.* at 1061, notwithstanding the fact that the letter

also said that the "account is now being handled by debt collectors," *id.* at 1064. The Seventh Circuit recognized that the plaintiff's argument had "some merit," but concluded that she could not "prevail because at the summary judgment stage of a case she must do more than merely speculate about how a naive debtor would interpret the letter." *Id.* at 1061. The plaintiff's own testimony that she was confused by the name was not sufficient in the absence of survey evidence, for example, to create a genuine issue of material fact. *Id.* at 1062.

*Volden*, an Eighth Circuit decision, is perhaps most relevant to this situation, though it also was an affirmance of summary judgment. 440 F.3d 947. There, the court held that the initial communication disclosure ("Federal law requires us to inform you that this is an attempt to collect a debt and any information obtained will be used for that purpose") satisfied § 1692e(11) because it "effectively convey[ed]" the fact that the communication was from a debt collector, even though the letter was a subsequent communication. *Id.* at 955. But apart from being decided in a different procedural posture by a different circuit court, the letter was sent by a company called Innovative Financial Systems, Inc. and, like the letter in *Epps*, it bore no indication that it could have been sent by anyone other than a collection agency.

The Court rejects Durham's categorical assertion that the initial communication notice suffices as a matter of law to inform a consumer in a subsequent notice that the letter is from a debt collector. As the *Damm* court observed, § 1692e(11) is "quite clear on what is required of a debt collector in an initial communication and in a subsequent communication," and in subsequent communications, a debt collector must "identify itself as a debt collector to comply with the statute." 2017 WL 2193237, at 2. This interpretation properly harmonizes the statutory text subsection (11), which contains separate clauses providing what a debt collector must "disclose in

the initial written communication" and what it must "disclose in subsequent communications." 15 U.S.C. § 1692e(11). In this case, nowhere does the Letter state that it was sent by a debt collector.

The Court agrees, however, that the statutory text need not be repeated verbatim to meet the FDCPA's requirement, particularly given the materiality requirement for § 1692e claims. But even *Volden* appears to recognize that whether a letter "effectively conveys" the required information under § 1692e(11) depends on the letter's context, and does not hold that the initial communication disclosure necessarily conveys the information required in the subsequent disclosure. 440 F.3d at 955 (noting that whether a letter is misleading turns in part on the "reasonableness" of the plaintiff's interpretation of the letter). Each of the cases to which Durham cites involve "easy" cases, where the letter indicated that it was sent by a "debt collection company" (as in *Ross*), indicated that the account was being handled by "debt collectors" (as in *Petit*, where the plaintiff also failed to present extrinsic evidence of confusion), or contained a good enough disclosure while not suggesting that the letter could be sent by anyone other than a debt collector (as in *Epps* and *Volden*).

This case, however, is much more closely aligned with *Damm*, except that while the letter in *Damm* included the required initial communication notice, Durham has not included the required subsequent communication notice in the Letter. Rather, at the top of the Letter is a large "Durham & Durham L.L.P. Attorneys at Law" logo, followed by a "re:" line providing the debt holder and outstanding balance, followed by "**FINAL NOTICE - SETTLEMENT OFFER**," in bolded, capitalized letters. [Filing No. 1-1 at 2.] The Letter directs the consumer to Durham's law

9

firm website and provides that "no attorney with this firm has personally reviewed the particular circumstances of your account."[2] The Letter is signed "Durham & Durham, L.L.P."

The Court cannot say as a matter of law that the use of the initial communication notice ("This is an attempt to collect a debt. Any information obtained will be used for that purpose.") sufficiently compensates for the omission of the subsequent communication notice in this case. This is because the Letter contains other indicators that suggest that Durham may play a role other than debt collector with respect to Mr. Okulovich. For example, while Durham argues that "**SETTLEMENT OFFER**" has an ordinary meaning, such as discount, it also has a special legal meaning. The fact that the Letter was sent by a law firm makes it all the more reasonable that an unsophisticated consumer might infer that Durham was acting as a law firm, seeking a settlement for or representing its client in legal proceedings as opposed to merely attempting to collect a debt. Likewise, while the Letter states that "no attorney with this firm has personally reviewed the particular circumstances of your account," an unsophisticated consumer may reasonably infer that an attorney review would be legal in nature and not merely part of an effort to collect a debt.

In short, the Court concludes that it is not "apparent from a reading of the letter that not even a significant fraction of the population would be misled by" the Letter or the omission of the subsequent communication notice. *Zemeckis*, 679 F.3d at 636. Mr. Okulovich is therefore entitled to "produc[e] extrinsic evidence, such as consumer surveys, to prove that unsophisticated

---

[2] Durham submits that other courts have required this disclaimer to avoid "[t]he false representation or implication that . . . any communication is from an attorney" under 15 U.S.C. § 1692e(3). [Filing No. 21 at 5 (citing *Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360, 364 (2d Cir. 2005)).] This issue may be further addressed on summary judgment, though it underscores the importance of providing a clear subsequent communication notice under subsection (10) to make clear that any law firms or attorneys involved are acting as debt collectors and not as providers of legal services.

consumers do in fact find the challenged statements misleading or deceptive," *Janetos*, 825 F.3d at 323, and dismissal is not appropriate.

## IV.
### MOTION FOR SANCTIONS

Finally, Durham has moved for sanctions under Federal Rule of Civil Procedure 11 on the basis that Mr. Okulovich is pursuing frivolous claims. [Filing No. 12.] Rule 11(b)(2) requires attorneys to certify to the Court that all filings "are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2). The Court has concluded not only that Mr. Okulovich's Complaint is nonfrivolous, but also that it plausibly states a claim for relief, making Rule 11 sanctions inappropriate.

Additionally, while Durham represents that it served Mr. Okulovich with a so-called "Rule 11 letter" prior to filing its Motion for Sanctions, [Filing No. 12-1 at 2-4], Rule 11(c)(2) requires that the motion itself be served on the other party at least 21 days prior to filing. Fed. R. Civ. P. 11(c)(2) ("The motion [for sanctions] must be served under Rule 5, but it must not be filed or be presented to the court if the challenged . . . claim . . . is withdrawn or appropriately corrected within 21 days after service . . . ."). To the extent a party may "substantially comply" with Rule 11(c)(1) by sending a letter instead of the actual motion, the letter must offer "the opportunity to withdraw or correct the challenged pleading within 21 days without imposition of sanctions." *N. Ill. Telecom, Inc. v. PNC Bank, N.A.*, 850 F.3d 880, 888 (7th Cir. 2017). But the Seventh Circuit recently warned in *Northern Illinois Telecom* that "[p]arties and district courts that rely on a theory of substantial compliance should understand that . . . they are inviting possible *en banc* and/or Supreme Court review of the question" of whether substantial compliance with Rule 11(c)(1) may

suffice under any circumstances. *Id.* at 888 n.5. As the court observed, "[i]t should not be difficult for a party who is serious about seeking Rule 11 sanctions to comply with Rule 11(c)(2)." *Id.*

Durham's Rule 11 letter mentions nothing about the 21-day safe harbor and thus fails to substantially comply with Rule 11(c)(1), if indeed substantial compliance would even suffice after *Northern Illinois Telecom*. [*See* Filing No. 12-1 at 2-4.] Nor does Durham represent that it actually served its Motion for Sanctions on Mr. Okulovich as required by the plain language of Rule 11(c)(2). The Court therefore denies Durham's Motion for Rule 11 Sanctions for this additional reason. *See also Heinen v. Northrop Grumman Corp.*, 671 F.3d 669, 671 (7th Cir. 2012) (". . . [T]his court is not inclined to award sanctions in favor of a party that cannot be bothered to follow the rules itself.").

## V.
### CONCLUSION

The Seventh Circuit has repeatedly cautioned the courts against "reliance on our intuitions," recognizing that there is a "distinction between what may confuse a federal judge and an unsophisticated consumer." *McMahon v. LVNV Funding, LLC*, 744 F.3d 1010, 1020 (7th Cir. 2014) (internal quotation omitted). Durham may ultimately prevail in its arguments that the Letter adequately conveyed the required information and is not otherwise misleading to the unsophisticated consumer, but "[w]hether a dunning letter is confusing is a question of fact." *Id.* at 1019. The Court therefore **DENIES** Durham's Motion to Dismiss, [Filing No. 11], and Motion for Rule 11 Sanctions, [Filing No. 12].

Date: 10/2/2017

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record.**